1

2

3

4

5

6                     IN THE UNITED STATES DISTRICT COURT

7                          FOR THE DISTRICT OF ARIZONA

8

9   | Moon Mountain Farms, LLC, | No. CV-13-00349-PHX-DJH |
   |---|---|
10  | Plaintiff, | **ORDER** |
11  | v. | |
12  | Rural Community Insurance Company, | |
13  | Defendant. | |

14          This matter is before the Court on Plaintiff's Motion for Partial Summary

15   Judgment (Doc. 233) and Defendant's Motion for Summary Judgment (Doc. 236), both

16   filed on December 19, 2014.[1]  Plaintiff and Defendant each filed a separate statement of

17   facts (Docs. 234, 264) in support of their motions.  On January 30, 2015, each party filed

18   a Response (Docs. 254, 256) to the opposing party's summary judgment motion.  In

19   addition, each filed a controverting statement of facts (Docs. 255, 257).  On February 20,

20   2015, Plaintiff and Defendant each filed a Reply (Docs. 265, 267).  That same day,

21   Plaintiff filed a controverting and supplemental statement of facts (Doc. 266) and

22   Defendant filed a "reply" in support of its statement of facts (Doc. 270).  The Court has

23   also considered Defendant's Notice of Supplemental Authority in Support of Defendant's

24   Motion for Summary Judgment (Doc. 309) filed on May 6, 2015.

25

26   ───────────────

27          [1] Both parties have requested oral argument.  The Court denies the request because
     the issues have been fully briefed and oral argument will not aid the Court's decision. *See*
28   Fed.R.Civ.P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f)
     (same).

1    **I.  Background**

2        Plaintiff Moon Mountain Farms, LLC initiated this action by filing a Verified

3    Complaint on January 25, 2013 in Maricopa County Superior Court.  (Doc. 1-1).[2]

4    Defendant removed the case to federal court on February 19, 2013.  (Doc. 1).

5        In summarizing the facts of the case, the Court relies on the Findings of Fact in the

6    Final Award from the American Arbitration Association proceedings dated January 15,

7    2013.   (Doc. 234-1).   The Court previously took judicial notice of this and other

8    documents pertaining to the arbitration.  (Doc. 72 at 7 n.4).  In addition, in a separate

9    action, CV 13-00141-PHX-SRB, the Court confirmed the arbitrator's award by granting

10   Plaintiff's Motion for Judgment on the Pleadings on its Application for Confirmation of

11   Arbitration Award.  (Doc. 21 in CV 13-00141-PHX-SRB).  Moreover, the parties have

12   stipulated in this action that neither will challenge the arbitrator's findings.  (Doc. 11 at

13   25, ¶ 13).

14       Plaintiff, which owns and operates plant nurseries, was insured during the relevant

15   time under two commercial crop insurance policies issued by Defendant RCIC, one

16   pertaining to Plaintiff's nursery stock in Ventura County, California and the other to its

17   nursery stock in Maricopa County, Arizona.  The policies were authorized, subsidized

18   and reinsured by the Federal Crop Insurance Corporation ("FCIC") under the Federal

19   Crop Insurance Act ("FCIA").[3]

20       The crop insurance policies excluded coverage for any losses caused by cold

21   temperatures unless (1) adequate cold protection equipment had been installed and a

22   failure of that equipment occurred, or (2) the lowest temperature exceeded the ability of

23   _____

24       [2] Citations to attachments and page numbers of filed documents correspond to the
25   attachment numbers and page numbers generated by the Court's electronic filing system,
     not pre-printed attachment numbers and page numbers on the original documents.

26       [3] Congress created the FCIC to administer the FCIA.  7 U.S.C. §§ 1501 to 1524;
27   s*ee Conrad v. Ace Prop. & Cas. Ins. Co.*, 532 F.3d 1000, 1001 (9th Cir. 2008).  "The
     FCIA empowers the FCIC to provide crop insurance directly to farmers or provide
28   reinsurance to private insurance providers who then provide crop insurance to farmers."
     *Id.* at 1001-02.

1    the cold protection equipment to protect the insured plants.  The required cold protections

2    varied depending on the "hardiness zone" assigned to the county where the operation was

3    located.   Because Ventura County and Maricopa County are in the same "hardiness

4    zone," the same requirements applied to both locations.  The applicable cold protection

5    requirements also varied according to the type of plants being protected.  For example,

6    "Storage Key G2" required certain plants to be "covered with thermo blankets or poly

7    during periods of cold temperature," whereas "Storage Key G3" required certain plants

8    "to be stored in a greenhouse, covered with plastic film, equipped with irrigation and a

9    heating system."

10    Defendant, as a crop insurance provider under the FCIA, was subject to

11    underwriting procedures in the USDA's 2007 Nursery Crop Insurance Underwriting

12    Guide.   Among those procedures, the Guide required an inspection report to be

13    completed prior to acceptance of any application for insurance.  In the event of a negative

14    inspection report, the insurance company was to "notify the nursery in writing that a loss

15    from cold temperatures may be denied or deny all coverage."  The Guide further provided

16    that "[i]f the over-winterization cold protection is inadequate, the company will notify the

17    nursery in writing that a loss from cold temperatures may be denied or deny all

18    coverage."

19    After Plaintiff first applied for crop insurance policies in 2005, Defendant's agent

20    conducted an inspection of the Maricopa and Ventura County operations in March and

21    April 2005, respectively.  The inspection report of the Ventura County operation found

22    Plaintiff's cold weather facilities "adequate," though it recognized Plaintiff did not have

23    greenhouses at that facility.  The report of the Arizona facility incorrectly noted Plaintiff

24    had adequate cold storage protection, even though that facility also had no greenhouses

25    for the ficus trees.  Defendant never sent notice to Plaintiff of reduced or no coverage

26    based on those initial inspection reports, despite the lack of greenhouses at each location.

27    In November 2005, Defendant's agent conducted a second inspection of the

28    Ventura County operation after Plaintiff reported a total inventory value of more than

1   twice the amount of the previous crop year.  The second inspection found Plaintiff's cold

2   weather facilities in Ventura County to be "inadequate" because Plaintiff lacked

3   greenhouses for the ficus trees.  Defendant, however, failed to provide Plaintiff with a

4   copy of the underwriting report generated from the inspection.

5         As a result of a cold weather event in mid-January 2007, Plaintiff suffered damage

6   to its nursery stock at both locations.  Plaintiff notified Defendant of the likely loss on

7   January 17, 2006.  Upon investigation, Defendant determined Plaintiff had failed to

8   implement acceptable cold protection at both locations for the plants that were subject to

9   Storage Keys G1, G2, G3, and G4.  Defendant therefore concluded the cold weather

10   damage to these plants was not covered under either policy.  Defendant also determined

11   that the losses at both locations were short of the policy deductibles.  Defendant therefore

12   found Plaintiff was not entitled to indemnity under either policy.

13         Plaintiff formally filed claims for its losses on July 17, 2007.  Defendant denied

14   coverage on August 29, 2007, and denied a subsequent appeal on December 6, 2007.

15   Plaintiff filed an arbitration demand on September 18, 2008.  The arbitration proceedings

16   concluded on January 15, 2013 when the arbitrator issued a Final Award of

17   $2,797,369.00 in favor of Plaintiff.  The award was comprised of $1,897,757.00 for

18   Plaintiff's California operations, $255,529.00 for its Arizona operations, and $644,083.00

19   in interest.

20         Ten days later, on January 25, 2013, Plaintiff brought this action, alleging the

21   following claims: (1) bad faith, (2) negligence, (3) negligent misrepresentation, (4)

22   intentional misrepresentation, (5) fraud, (6) fraudulent non-disclosure, (7) breach of

23   fiduciary duty, (8) unlawful and/or unfair business practices, and (9) punitive damages.

24   The Court (Judge Bolton) subsequently granted in part Defendant's Motion for Judgment

25   on the Pleadings (Doc. 41) and dismissed Plaintiff's claim in Count VII for breach of

26   fiduciary duty and partially dismissed Plaintiff's negligence claim in Count II.  (Doc. 72).

27   The Court ruled that Plaintiff's claim for breach of fiduciary duty and part of the

28   negligence claim, "to the extent that Plaintiff argues over the denial of coverage," were

1    preempted under the FCIA and thus subject to arbitration.  (Doc. 72 at 4).  The Court

2    found that "[b]ecause these claims are related to the 'determination' of policy coverage,

3    and involve 'actions or inactions' that are 'required or authorized' under the FCIA, they

4    are subject to arbitration."  (*Id.*).   The Court further found that the "remaining claims

5    pertain to actions outside the scope of the policy and are not preempted."  (*Id.*).  No other

6    claims have been dismissed.

7    **II. Discussion**

8         In Plaintiff's Motion for Partial Summary Judgment, Plaintiff seeks a declaration

9    that (1) it had coverage under the polices, as found by the arbitrator; (2) the arbitrator's

10   findings pertaining to coverage and indemnity are conclusively established; and (3)

11   Defendant is precluded from disputing those findings or asserting non-coverage as a

12   defense to Plaintiff's causes of action.  (Doc. 233 at 1-2).   Plaintiff argues that the

13   arbitrator's findings, which included a determination that Defendant must indemnify

14   Plaintiff the full amount owing under the policy, are entitled to *res judicata* treatment.

15   (Doc. 233 at 3).   Consequently, accordingly to Plaintiff, Defendant should not be

16   permitted to argue that the policies did not provide coverage for Plaintiff's claims or that

17   the arbitrator's findings and decisions were wrong. (*Id.*).

18        In response, Defendant argues that Plaintiff's motion must be denied "[b]ecause

19   the Aribitrator never found that MMF had 'coverage under the policies,' and indeed found

20   the opposite."  (Doc. 254 at 2).  Defendant further argues that even if the arbitrator had

21   found that Plaintiff's losses were covered under the policies, such a finding would not

22   decide the bad faith claim asserted by Plaintiff in this action.  To establish bad faith,

23   Plaintiff must demonstrate that Defendant acted unreasonably in its treatment and denial

24   of Plaintiff's insurance claims, not simply whether Defendant had to indemnify Plaintiff

25   under the policies.  (*Id.* at 2-3).  Defendant further argues it should be able to challenge

26   the arbitrator's ruling because if the "arbitration took place today, the Arbitrator's ruling

27   would not and could not stand" in light of an agency ruling issued after the arbitration

28   proceedings.

1        In Defendant's Motion for Summary Judgment, Defendant first argues that all of

2   Plaintiff's claims are preempted by the FCIA because they relate to the denial of

3   coverage.  (Doc. 236 at 3).  Defendant next argues that all of Plaintiff's claims could have

4   been asserted in the arbitration proceeding and are, therefore, barred by *res judicata*.  (*Id.*

5   at 6).  Third, Defendant argues that the damages Plaintiff seeks in this action would result

6   in double recovery because the arbitrator's prejudgment interest award already

7   compensated Plaintiff for the delay in receiving the insurance money.  (*Id.* at 9).  Fourth,

8   Defendant argues it is entitled to summary judgment because Plaintiff failed to mitigate

9   its damages.  (*Id.* at 13).  Lastly, Defendant contends it is entitled to summary judgment

10   on the merits of Plaintiff's claims because (1) the insurance policies did not cover

11   Plaintiff's losses and (2) Plaintiff cannot show proximate cause.

12        In response, Plaintiff argues that Defendant's preemption and *res judicata*

13   arguments have already been rejected by Judge Bolton in prior orders.  As a result,

14   according to Plaintiff, the arguments are barred by the law of the case doctrine.  (Doc.

15   256 at 11).  Regarding Defendant's double recovery contention, Plaintiff responds that the

16   prejudgment interest award pertained to Plaintiff's contractual damages, not damages

17   caused by Defendant's tortious conduct alleged in this action.  (Doc. 256 at 16).  With

18   respect to mitigation of damages, Plaintiff argues Defendant has failed to demonstrate as

19   an undisputed fact that Plaintiff could have reasonably mitigated its damages.  Finally,

20   Plaintiff disputes Defendant's assertion that it is entitled to summary judgment on the

21   merits.  (Doc. 256 at 7).  Plaintiff argues it has presented substantial evidence that

22   Defendant "was unreasonable in investigating, evaluating and processing [Plaintiff's]

23   claim from the day it learned of it through [Plaintiff's] confirmation of the Arbitration

24   Award it obtained."  (Doc. 256 at 8).

25   **A.  Legal Standards**

26   The Court must grant summary judgment "if the movant shows that there is no

27   genuine dispute as to any material fact and the movant is entitled to judgment as a matter

28   of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323

1    (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994).  The

2    materiality requirement means "[o]nly disputes over facts that might affect the outcome

3    of the suit under the governing law will properly preclude the entry of summary

4    judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Substantive law

5    determines which facts are material.  *Id.*  The dispute must also be genuine, meaning the

6    evidence is such that a reasonable jury could return a verdict for the nonmoving party."

7    *Id.*  The Court determines whether there is a genuine issue for trial but does not weigh the

8    evidence or determine the truth of matters asserted.  *Jesinger*, 24 F.3d at 1131.

9            The moving party bears the initial burden of identifying the portions of the record,

10   including pleadings, depositions, answers to interrogatories, admissions, and affidavits,

11   that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*

12   *Corp.*, 477 U.S. at 323.  If the moving party meets its initial burden, the opposing party

13   must establish the existence of a genuine dispute as to any material fact.  *See Matsushita*

14   *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-586 (1986).  There is no issue

15   for trial unless there is sufficient evidence favoring the non-moving party.  *Anderson*, 477

16   U.S. at 249.   "If the evidence is merely colorable or is not significantly probative,

17   summary judgment may be granted."  *Id.* at 249-250.  However, the evidence of the non-

18   movant is "to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.*

19   at 255.

20           **B.  Analysis - Plaintiff's Motion**

21           As noted above, Plaintiff contends the arbitrator's decision, including the findings

22   of fact and conclusions of law contained therein, has collateral estoppel effect.  Plaintiff

23   therefore seeks a declaration from the Court that the arbitrator's findings pertaining to

24   coverage and indemnity are conclusively established and that Defendant cannot argue

25   otherwise.  Defendant claims the arbitrator did not actually find Plaintiff's losses were

26   covered under the policies, essentially arguing that collateral estoppel does not benefit

27   Plaintiff here.  Thus, resolution of Plaintiff's summary judgment motion turns, in large

28   part, on the arbitrator's findings, of which the parties' interpretations differ dramatically.

1    Defendant also argues collateral estoppel does not apply here because post-arbitration
2    decisions make clear that Defendant acted reasonably in denying the claims, the
3    arbitration award notwithstanding.

### 1.  Issue Preclusion Legal Standards

5    Issue preclusion, or collateral estoppel, bars "'successive litigation of an issue of
6    fact or law actually litigated and resolved in a valid court determination essential to the
7    prior judgment' even if the issue recurs in the context of a different claim."  *Taylor v.*
8    *Sturgell*, 553 U.S. 880, 892 (2008).  "To foreclose relitigation of an issue under collateral
9    estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation;
10   (2) the issue must have been actually litigated in the prior litigation; and (3) the
11   determination of the issue in the prior litigation must have been a critical and necessary
12   part of the judgment in the earlier action."  *Clark v. Bear Stearns & Co., Inc.,* 966 F.2d
13   1318, 1320 (9th Cir. 1992) (citing *Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d
14   1352, 1360 (11th Cir. 1985)).  "[P]reclud[ing] parties from contesting matters that they
15   have had a full and fair opportunity to litigate protects their adversaries from the expense
16   and vexation attending multiple lawsuits, conserves judicial resources, and fosters
17   reliance on judicial action by minimizing the possibility of inconsistent decisions."
18   *Montana v. U.S.*, 440 U.S. 147, 153-154 (1979).  An arbitration decision can have
19   collateral estoppel effect.  *Clark*, 966 F.2d at 1321 (citing *C.D. Anderson & Co., Inc. v.*
20   *Lemos,* 832 F.2d 1097, 1100 (9th Cir. 1987)).

### 2.  Arbitrator's Coverage and Indemnity Determinations

22   Here, the Court has no difficulty concluding that issue preclusion applies.
23   Defendant's arguments in response to Plaintiff's motion demonstrate that it seeks to
24   relitigate in this action the same coverage issues the arbitrator already decided.  The
25   parties had a full and fair opportunity to litigate those issues in the arbitration proceeding.
26   Moreover, they were actually litigated.  In addition, the coverage issues were a critical
27   and necessary part of the arbitrator's ruling.  The standards for applying issue preclusion
28   are unmistakably present here.

1    Additionally, as noted above, issue preclusion applies to factual or legal issues

2    previously litigated and resolved, even if the issue recurs in the context of a different

3    claim.  Thus, even though the issues decided by the arbitrator arose in the context of

4    Plaintiff's contractual claims for indemnification under the insurance policies, the

5    arbitrator's decisions have preclusive effect in this action alleging bad faith and other

6    torts.

7    The Court therefore finds that the arbitrator's findings and conclusions foreclose

8    relitigation of coverage and indemnification issues in this action.  In ruling favorably for

9    Plaintiff, the arbitrator determined there was coverage under the policies for Plaintiff's

10   losses from the 2007 freeze and, as a result, Defendant was required to indemnify

11   Plaintiff.  Those issues have been decided and are not open to challenge in this case.

12   The Court is not persuaded by Defendant's argument that the arbitrator actually

13   determined Plaintiff's losses were *not* covered by the policies.  Defendant's no coverage

14   argument focuses on the plants subject to the G3 Storage Key.  (Doc. 254 at 4).  There

15   appears to be no dispute about the arbitrator's findings with respect to the plants subject

16   to Storage Keys G1, G2 and G4.  The arbitrator found that Plaintiff had established "its

17   cold protection methods were as good as or better than those methods delineated under

18   Storage Keys G1, G2, or G4."  (Doc. 234-1 at 13).  As a result, the arbitrator determined

19   Defendant "improperly assessed uninsured causes as to the G1, G2, and G4 plants in

20   Ventura County, California, and Maricopa County, Arizona."  (*Id.* at 14).  Plaintiff's

21   losses for those plants were therefore covered.

22   Defendant claims, however, that the arbitrator's findings with respect to the G3

23   plants establish there was no coverage under the policies for those losses.  Defendant

24   points to the arbitrator's finding that "[t]he only acceptable cold storage for G3 plants is to

25   place the plants in a heated greenhouse.  [Plaintiff] concedes that it did not store any of its

26   G3 plants in a heated greenhouse."  (Doc. 234-1 at 14).  Defendant contends that having

27   found Plaintiff's cold storage for its G3 plants to be deficient, the arbitrator necessarily

28   found there was no coverage under the polices for the losses of the G3 plants.  The Court

1    disagrees.

2         The arbitrator's recognition that Plaintiff did not have adequate cold protection for

3    its G3 plants did not end his analysis, nor did it foreclose a finding that the G3 plant

4    losses were covered.  The arbitrator considered not only Plaintiff's obligations under the

5    terms of the policies, but also Defendant's.   The arbitrator explained that he was

6    "empowered to determine the consequences for [Defendant's] decision to bind coverage

7    without notifying [Plaintiff] of cold storage deficiencies and lack of coverage under

8    Storage Key G3." (Doc. 234-1 at 14).  Exercising that authority, the arbitrator then found

9    that "[o]n this record, [Defendant] cannot apply Storage Key G3 against [Plaintiff]

10    because [Defendant] accepted the policy and at the same time gave [Plaintiff] no notice

11    of inadequate cold storage measures."  (*Id.* at 15).  Accordingly, he ruled that Defendant

12    "must indemnify [Plaintiff] for its Storage Key G3 plants because it failed to provide

13    [Plaintiff] with the required notice of deficiencies, even though [Plaintiff's] cold storage

14    for its G3 plants was deficient."  (*Id.* at 16).  Thus, Defendant was ordered to indemnify

15    Plaintiff for the full amount it was entitled to under the policies.  In other words,

16    Plaintiff's losses of its G1, G2, G3 and G4 plants were all covered.

17         Defendant claims that the arbitrator's ruling with respect to the G3 plants was

18    based on "equitable or quasi-contract principles," and was not a determination of

19    coverage under the policies.  In Defendant's view, because Plaintiff did not have the

20    proper cold protection for its G3 plants, there was no "coverage," despite the fact that the

21    Arbitrator found in favor of Plaintiff and ordered indemnification for its G3 plant losses.

22    Tellingly, Defendant provides no legal authority on point to support its overly narrow

23    interpretation of "coverage" under the policies. (Doc. 254 at 4-7).

24         Finding no support for Defendant's position, the Court agrees with Plaintiff's more

25    common sense argument.  (*See* Doc. 265 at 2-5).   Clearly, the arbitrator's basis for

26    ordering indemnity for the G1, G2 and G4 plant losses was different than the basis for

27    ordering indemnity for the G3 plant losses.  In analyzing both, however, the arbitrator

28    applied the terms of the policies, including the documents incorporated therein, to make

1    his determinations.  As referenced above, Defendant, as a crop insurance provider under

2    the FCIA, was subject to underwriting procedures in the USDA's 2007 Nursery Crop

3    Insurance Underwriting Guide.  (Doc. 234-1 at 7).  The crop insurance policies at issue

4    incorporated the Underwriting Guide.  (Doc. 266, ¶ 23).  The arbitrator's decision

5    regarding the G3 plants was based on Defendant's failure to comply with the

6    Underwriting Guide. (Doc. 234-1 at 15-16).  Even though Plaintiff did not have in place

7    the cold protection required under the policies for its G3 plants, Defendant failed to

8    comply with its obligations under the policies to provide Plaintiff with required notice of

9    the deficiencies.  (*Id.*).  Applying contract principles, the arbitrator found that by failing

10   to comply with the terms, Defendant was obligated to pay Plaintiff's losses.  The losses

11   were therefore "covered" under the crop insurance policies.

12          Despite the arbitrator's findings that Plaintiff's losses were covered, those findings

13   do not resolve the bad faith claim asserted by Plaintiff in this action.  Defendant is

14   entitled to argue in defense of the bad faith claim that its decision to deny Plaintiff's

15   insurance claims for the G3 plant losses was based on Plaintiff's lack of required cold

16   protection methods.  In doing so, Defendant is permitted to rely on language in the

17   arbitrator's decision recognizing that fact.  Defendant may not, however, argue that the

18   arbitrator found no coverage.  The arbitrator decided the coverage and indemnity issues

19   in Plaintiff's favor and Defendant is prohibited from relitigating those issues.

20          **3.  Effect of Agency Determinations**

21          Defendant further argues that issue preclusion does not apply here because

22   "subsequent law makes clear that [Defendant's] position was reasonable."  (Doc. 254 at

23   9).  Defendant contends that fourteen months after the arbitrator issued the Final Award,

24   the FCIC issued a Final Agency Determination ("FAD") stating that an arbitrator may not

25   award an indemnity or damages under a theory of equitable estoppel because doing so

26   would be an improper waiver of the policy terms.  (*Id.*) (citing Final Agency

27   Determination: FAD-211, Doc. 264-5 at 100-102).  Defendant argues this FAD "calls

28   into question the Arbitrator's findings" and confirms that Defendant's position during the

1  arbitration was correct.

2      As reflected above, however, this Court disagrees with Defendant's argument that

3  the arbitrator's decision was based on equitable estoppel.  The arbitrator applied the terms

4  of the policies, including those incorporated from the Underwriting Guide, and found in

5  favor of Plaintiff.  Those terms included notice requirements with which Defendant failed

6  to comply.  The arbitrator's award was based on an application of the policy provisions,

7  not on a theory of equitable estoppel. Accordingly, the Court finds that the FAD has no

8  bearing on the Court's analysis of whether issue preclusion applies.  Defendant may

9  therefore not challenge the arbitrator's findings based on the FAD.

10      Defendant further argues that the FCIC determined in an Interpretation of

11 Procedure ("IOP") dated June 21, 2010, "that the cold weather exclusion must be

12 enforced, regardless of whether the insured was provided notice of a negative inspection

13 report."  (Doc. 254 at 11).  The IOP stated that failing to provide notice "'cannot make

14 those plants without proper cold protection covered for cold temperatures.  The policy

15 provisions take precedence.'"  (*Id.*) (citing Defendant's Controverting Statement of Facts

16 (Doc. 255 at 6, ¶ 14)).  However, as Plaintiff explains in its Reply (Doc. 265 at 7), and as

17 the arbitrator asserted in his decision, the effect of Defendant's failure to follow the

18 prescribed notice procedures was an issue for the arbitrator.  Defendant's contention that

19 this IOP was "dispositive of the question of whether there was coverage for the G3

20 plants" is therefore rejected.

21          **4.  Conclusion – Plaintiff's Motion**

22      For the foregoing reasons, the Court will grant Plaintiff's Motion for Partial

23 Summary Judgment.  The arbitrator's conclusions that Plaintiff's losses were covered

24 under the policies and that, as a result, Plaintiff was entitled to indemnification are

25 conclusively established for purposes of this action.  Defendant is therefore precluded

26 from disputing those determinations, including any argument that the arbitrator found no

27 coverage, as a defense to Plaintiff's causes of action.  Similarly, the arbitrator's factual

28 findings in support of his coverage and indemnity conclusions are entitled to collateral

1    estoppel effect and may not be relitigated in this action.

2         **C.  Analysis - Defendant's Motion**

3         As summarized above, Defendant contends it is entitled to summary judgment on

4    Plaintiff's claims for five reasons.  The Court will address each one.

5         **1.  Preemption**

6         Defendant first argues Plaintiff's claims are preempted under the FCIA because

7    they all relate to Defendant's policy coverage determinations.  Defendant asserts this was

8    the basis for Judge Bolton's previous dismissal of one of Plaintiff's claims and a portion

9    of a second claim.  (Doc. 236 at 4) (citing Order at doc. 72 at 4).  Defendant contends that

10   "[t]he factual record in this case now demonstrates that all of Plaintiff's claims relate to

11   these determinations, and under the Court's order, are preempted."  (Doc. 236 at 4).

12        As addressed in the Background section above, the Court (Judge Bolton)

13   dismissed Plaintiff's claim for breach of fiduciary duty and part of the claim for

14   negligence because "these claims are related to the 'determination' of policy coverage,

15   and involve 'actions or inactions' that are 'required or authorized' under the FCIA."  (Doc.

16   72 at 4).  As such, "they are subject to arbitration" and preempted.  (*Id.*).  The Court

17   further found that the "remaining claims pertain to actions outside the scope of the policy

18   and are not preempted."  (*Id.*).

19        The Court agrees with Plaintiff's argument in its Response (Doc. 256) that this

20   issue has already been decided, and the Court finds no basis to revisit it here.  *See*

21   *Minidoka v. Irrigation Dist. V. Dep't of Interior,* 406 F.3d 567, 573 (9th Cir. 2005)

22   (recognizing that "[u]nder the law of the case doctrine, a court is ordinarily precluded

23   from reexamining an issue previously decided by the same court, or a higher court, in the

24   same case.") (citation omitted).  The Court is not persuaded by Defendant's argument that

25   the damages evidence produced by Plaintiff during the course of discovery alters the

26   preemption analysis.

27        Defendant claims that the report by Plaintiff's damages expert, David Knopf,

28   shows that Plaintiff's alleged damages all derive from Defendant's decision to deny

1    coverage of Plaintiff's insurance claims in 2007.  The report states Plaintiff's damages are

2    due to the delay in obtaining the insurance proceeds and the loss of use of those proceeds,

3    thus preventing Plaintiff from replenishing, growing and selling new tree inventory.

4    Defendant argues that the damages asserted in the report necessarily related to

5    Defendant's determination to deny coverage under the policies.

6            The Court disagrees.  Defendant fails to recognize that the damages Plaintiff is

7    claiming also pertain to Defendant's alleged bad faith conduct in handling Plaintiff's

8    insurance claims.  Plaintiff contends Defendant treated Plaintiff unfairly throughout their

9    relationship, including during underwriting, while adjusting the loss, when evaluating

10   Plaintiff's claim, and during the lengthy arbitration proceedings, all of which contributed

11   to the significant delay in receiving the insurance proceeds.  It was not merely

12   Defendant's denial of Plaintiff's claims that caused the delay on which the alleged

13   damages are based.  The report from Plaintiff's damages expert therefore does nothing to

14   change the Court's prior determination that Plaintiff's "remaining claims pertain to actions

15   outside the scope of the policy and are not preempted."  (Doc. 72 at 4).

16           Moreover, the non-binding decision from the Eastern District of Washington

17   provided in Defendant's Notice of Supplemental Authority (Doc. 309) does not alter the

18   Court's analysis.  The district judge in that case recognized that the FCIA does not

19   preempt all state law causes of action.  (Doc. 309-1 at 19).  The state law claims at issue

20   in that case differed from the claims here in that they pertained directly to the

21   determinations of policy coverage made by the defendant insurance company.  (*Id.* at 20-

22   21).  Judge Bolton conducted essentially the same analysis as was done in that case,

23   specifically distinguishing between claims that "related to the 'determination' of policy

24   coverage, and involve[ed] 'actions or inactions' that are 'required or authorized' under the

25   FCIA," and those that "pertain[ed] to actions outside the scope of the policy." (Doc. 72 at

26   4).  Thus, nothing about Defendant's supplemental authority warrants reconsideration of

27   the Court's previous preemption analysis or conclusion.  Defendant is therefore not

28   entitled to summary judgment based on preemption.

- 14 -

1

**2.  Res Judicata**

2      Defendant next argues that Plaintiff's claims in this action could have been

3  asserted in the arbitration and are therefore barred by *res judicata*.  This too is an

4  argument Defendant raised in its Motion for Judgment on the Pleadings (Doc. 41).  Like

5  the preemption issue, Plaintiff argues in response that this issue has already been decided

6  and the law of the case doctrine prohibits further consideration.  The Court agrees.

7      Nothing of significance has changed since the Court issued its Order (Doc. 72)

8  rejecting this same argument by Defendant.  Applying the legal standards for *res*

9  *judicata*, or claim preclusion, the Court found that the claims raised here were also raised

10  in the arbitration.  (Doc. 72 at 6).  The Court explained that the arbitrator "narrowed the

11  scope of the issues to contractual indemnification" and did not discuss the other claims in

12  the Final Award.  (*Id.*).  Because the arbitrator never decided the other claims, "there was

13  no final judgment on the merits."  (*Id.*) (citing *Hells Canyon Pres. Council v. U.S. Forest*

14  *Serv.*, 403 F.3d 683, 690 (9th Cir. 2005)).  Accordingly, the Court found Plaintiff's

15  remaining claims in this action are not barred by *res judicata*.  (*Id.*).  The Court finds no

16  basis to revisit its prior order.  Defendant is not entitled to summary judgment based on

17  *res judicata*.

18

**3.  Duplicative and Speculative Damages**

19      Defendant next argues it is entitled to summary judgment because the damages

20  Plaintiff seeks in this action "arise from the delay in [Plaintiff] receiving its insurance

21  money, which its prejudgment interest award already covered."   (Doc. 236 at 9).

22  Defendant contends Plaintiff is seeking "only one measure of damages – those resulting

23  from [Defendant's] delayed payment under [Plaintiff's] policy." (*Id.*).  Defendant argues

24  that Plaintiff's damages theory is flawed because the prejudgment interest included as

25  part of the arbitrator's award compensated Plaintiff for the delay in receiving the

26  insurance money.  Defendant therefore claims Plaintiff is seeking to recover twice for the

27  same damages.

28      Plaintiff argues in response that the prejudgment interest awarded to Plaintiff by

1      the arbitrator was pursuant to contract.  The prejudgment interest, Plaintiff asserts, did not

2      compensate Plaintiff for the tort claims now before the Court.  The Court agrees.

3      When bad faith tort damages are recoverable, a "plaintiff is not limited to the

4      economic damages within the contemplation of the parties at the time the contract was

5      made."  *Rawlings v. Apodaca,* 151 Ariz. 149, 161, 726 P.2d 565, 577 (Ariz. 1986).

6      Plaintiff may recover all the losses caused by defendant's conduct, including damages for

7      pain, humiliation and inconvenience, as well as for pecuniary losses."  *Id.*

8      Here, Plaintiff's alleged damages for bad faith are broader than the damages

9      sought in the contract action before the arbitrator.  As Plaintiff explains, the damages

10     amount alleged in this action "is the quantification of the incremental impact to [Plaintiff]

11     resulting from the six year delay" by Defendant in paying the insurance proceeds.  (Doc.

12     256 at 17) (emphasis in original).  Plaintiff's bad faith damages calculation takes into

13     account Plaintiff's loss of use of the insurance proceeds as far as its inability to purchase

14     additional inventory and thereby generate additional revenue during that period.  The

15     prejudgment interest awarded by the arbitrator, on the other hand, simply compensated

16     Plaintiff for the time value of money, not for any additional revenue that could have been

17     generated from the insurance money.  Moreover, Plaintiff's damages calculation, as set

18     forth in Mr. Knopf's report, specifically excludes the insurance proceeds and the

19     prejudgment interest, thus eliminating any risk of double recovery.  Because Plaintiff's

20     alleged damages in this action encompass more than the prejudgment interest awarded by

21     the arbitrator, the Court finds Defendant's double recovery argument to be without merit.

22     Defendant is not entitled to summary judgment on that basis.

23     Nor is it entitled to summary judgment based on its contention that Plaintiff's

24     "damages evidence is entirely speculative and thus insufficient as a matter of law."  (*Id.*).

25     Defendant raised essentially the same argument in its Motion to Exclude Testimony and

26     Opinions of David A. Knopf (Doc. 235), claiming Plaintiff's damages calculations are

27     speculative and based on unverified assumptions.  In denying Defendant's motion, the

28     Court rejected that argument and found that the expert's sales and market assumptions

1   were based on sufficiently reliable information including another expert's opinion,

2   financial records and bank documents assessing Plaintiff's economic condition.  (Doc.

3   299 at 5-6).  That same analysis applies here.  Plaintiff's damages calculations are not so

4   speculative as to render them insufficient as a matter of law.

5       Defendant further argues that Plaintiff's claimed damages "extend beyond those

6   expressly authorized by the insurance policy."  (Doc. 236 at 11).  Plaintiff contends that

7   Section 20(i) of the Common Crop Insurance Policy applies to this case and states as

8   follows:

9           In a judicial review only, you may recover attorneys' fees or
            other expenses, or any punitive, compensatory or any other
10          damages from us only if you obtain a determination from
            FCIC that we, our agent or loss adjuster failed to comply with
11          the terms of this policy or procedures issued by FCIC and
            such failure resulted in you receiving a payment in an amount
12          that is less than the amount to which you were entitled.

13  (Doc. 237-1 at 30).  A "judicial review" under this section, however, is a judicial review

14  of an arbitration decision.  (*Id.* at Section 20(b)(3), (c)).  This action is not a judicial

15  review of the arbitration decision.  Defendant presents no binding authority

16  demonstrating this provision is applicable to a separate action for bad faith and other

17  related torts.  Defendant is not entitled to summary judgment on this basis.

18          **4.  Failure to Mitigate**

19      Defendant next argues it is entitled to summary judgment because Plaintiff failed

20  to mitigate its damages.  (Doc. 236 at 13).  Defendant argues that Plaintiff's own business

21  records demonstrate that it had sufficient funds between 2007 and 2013 to implement the

22  recovery plan that formed the basis for its lost profits damages theory.  In addition,

23  Defendant argues that Plaintiff's owner, Les Blake, had sufficient personal assets to

24  invest in the recovery plan.  Defendant argues that by choosing not to use available funds

25  to implement the recovery plan, Plaintiff failed to mitigate its damages.

26      "The party in breach has the burden of showing that mitigation was reasonably

27  possible, but was not reasonably attempted."  *Fairway Builders, Inc. v. Malouf Towers*

28  *Rental Co., Inc.*, 124 Ariz. 242, 256, 603 P.2d 513, 527 (Ariz. App. 1979).  Whether the

1   duty to mitigate damages is violated is a question of fact.  *Id.*

2   Here, Defendant has not demonstrated that there is no genuine dispute of fact with

3   regard to Plaintiff's financial ability to mitigate its damages.  Defendant points to one

4   document, a 2008 financial statement that says Plaintiff's "[m]anagement believes the

5   Companies have sufficient liquidity to maintain and grow operations, and the Companies

6   have access to external financing when needed in the form of amounts available on lines

7   of credit."  (Doc. 236 at 14) (citing Doc. 237 at ¶ 70).  This vague assertion in a financial

8   statement falls well short of showing Plaintiff could have implemented the recovery plan

9   in the same way it could have if it had received the 2.1 million in insurance proceeds in

10  2007.  In addition, Defendant's argument that Mr. Blake's personal wealth could have

11  been used to implement the plan is unsupported by any legal authority that permits the

12  Court to consider an owner's personal wealth when considering the duty to mitigate.  For

13  these reasons, Defendant is not entitled to summary judgment on this basis.

14  **5.  Merits of Plaintiff's Claims**

15  Lastly, Defendant argues that the factual record demonstrates it is entitled to

16  summary judgment on the merits.  (Doc. 236 at 14-18).  First, Defendant argues that

17  Plaintiff's bad faith claim fails because the crop insurance policies did not cover

18  Plaintiff's losses.  Second, Defendant argues that Plaintiff's other tort claims fail for lack

19  of proximate cause.

20  With respect to Defendant's first assertion, the Court addressed that issue above in

21  deciding Plaintiff's summary judgment motion.  As found above, the arbitrator

22  determined there was coverage under the crop insurance policies and, as a result,

23  Defendant was required to indemnify Plaintiff.  Because those issues have been decided,

24  Defendant may not relitigate them here.  The Court therefore finds no merit to

25  Defendant's argument that it is entitled to summary judgment because the policies did not

26  cover Plaintiff's losses.

27  Finally, regarding proximate cause, Defendant contends Plaintiff "cannot establish

28  proximate cause because its alleged delay damages are not the reasonably foreseeable

1    result of [Defendant's] alleged misrepresentations."  (Doc. 236 at 17).  Defendant argues

2    that the foreseeable result of the alleged misrepresentations by Defendant, that Plaintiff

3    would be covered for losses from a freeze when in fact it would not, is simply the amount

4    Plaintiff would have been entitled to if Defendant's representation had been true.

5    Defendant claims that amount is precisely what Plaintiff received in the arbitration.

6    Defendant claims the additional damages Plaintiff is seeking in this action were not

7    reasonably foreseeable.

8         "Proximate cause is 'that which, in a natural and continuous sequence, unbroken

9    by an efficient intervening cause, produces an injury, and without which the injury would

10    not have occurred.'"  *Tellez v. Saban*, 188 Ariz. 165, 171, 933 P.2d 1233, 1239 (App.

11    1996) (quoting *Brand v. J.H. Rose Trucking Co.,* 102 Ariz. 201, 205, 427 P.2d 519, 523

12    (1967)).   To constitute a proximate cause, the conduct "need have contributed only

13    slightly to the injury."  *Id.* (citing *Ontiveros v. Borak*, 136 Ariz. 500, 505-506, 667 P.2d

14    200, 205-206 (1983)).  Proximate cause is ordinarily a question for the jury.  *Id.* (citing

15    *Smith v. Johnson,* 183 Ariz. 38, 41, 899 P.2d 199, 202 (App. 1995)).

16         The Court finds that Defendant has failed to establish as a matter of law that

17    Plaintiff's alleged damages were not a reasonably foreseeable result of Defendant's

18    misrepresentations regarding coverage.  As Plaintiff argues, whether events that delayed

19    Plaintiff's receipt of the insurance proceeds flowed in a "natural and continuous

20    sequence" from Defendant's misrepresentations is a question of fact for the jury.  (Doc.

21    256 at 9).  Defendant is therefore not entitled to summary judgment on this basis.

22                 **6. Conclusion – Defendant's Motion**

23         For the foregoing reasons, the Court will deny Defendant's Motion for Summary

24    Judgment.

25         **IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary

26    Judgment (Doc. 233) is **GRANTED**.  The arbitrator's conclusions that Plaintiff's losses

27    were covered under the policies and that, as a result, Plaintiff was entitled to

28    indemnification are conclusively established for purposes of this action.

1     Accordingly,

2         **IT IS ORDERED** that Defendant is precluded from disputing those

3 determinations, including any argument that the arbitrator found no coverage, as a

4 defense to Plaintiff's causes of action.   Similarly, the arbitrator's factual findings in

5 support of his coverage and indemnity conclusions are entitled to collateral estoppel

6 effect and may not be relitigated in this action.

7         **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment

8 (Doc. 236) is **DENIED**.

9         Dated this 8th day of May, 2015.

10

11

12                                    Honorable Diane J. Humetewa

13                                    United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28